# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARK MILLER, ) | 3:06-CV-00077-KJD (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| E.K. McDANIEL, ET AL., ) | |
| Defendants. ) | January 11, 2007 |

This Report and Recommendation is made to the Honorable Kent J. Dawson, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a preliminary injunction (#9). Defendants opposed (#15) and plaintiff replied (#20). The court has thoroughly reviewed the record and the motion and recommends that plaintiff's motion for a preliminary injunction (#9) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Mark Miller ("plaintiff"), a *pro se* prisoner, is currently incarcerated by the Nevada Department of Corrections ("NDOC") at the Ely State Prison ("ESP") (#1). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 alleging that prison officials violated his Eighth Amendment right against cruel and unusual punishment by their refusal address noise issues that exacerbate the plaintiff's symptoms of bipolar disorder.[1]  *Id*.  Plaintiff brings his

---

[1] Plaintiff originally filed suit in the Seventh Judicial Court of the State of Nevada on December 1, 2005 (#1). On February 10, 2006, the defendants removed to federal court pursuant to 28 U.S.C. § 1441 because it is an action arising under the Constitution and laws of the United States over which this District Court has original jurisdiction. *Id*.

complaint against E.K. McDaniel, ESP Warden; Debra Brooks, ESP Associate Warden of Operations, and Kay Weiss, ESP Caseworker. *Id*.

In Count I, plaintiff alleges that defendants have recklessly and deliberately failed to take corrective action "to stop the incessant and excessive noise levels in the lockdown units at ESP," particularly Units 7-A and 7-B, which violates the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. *Id*., ¶ 29. Plaintiff alleges that inmates in the lockdown units are permitted to "yell all night (sometimes in groups), beat on the walls, metal toilets, and metal doors and play their radios and/or CD players turned all the way up, at all hours, day and night." *Id*., ¶ 11. Plaintiff alleges that the "incessant and excessive noise levels in the lockdown units at ESP have continuously exacerbated plaintiff's Bipolar Disorder and, have directly caused plaintiff to suffer from frequent cycles of mania and depression," which symptoms include " severe anxiety, severe agitation and an inability to sleep, paranoia, thoughts of death and suicide, delusions, loss of appetite, aggressive behavior, fatigue and loss of energy." *Id*., ¶¶ 10 and 12.

On June 23, 2006, plaintiff filed a motion for preliminary injunction (#9). The plaintiff cites to ESP Institutional Procedure ("IP") 7.18, Housing Rules and Regulations (Effective June 29, 2005). *Id*.; *see also* #15, Declaration ("Decl.") of Brooks, Ex. B. IP 7.18.01, General Rule 1.3 states

> Housing units are to be quiet at all times. Disruptive activities will not be tolerated. TV's and radios are to be played with earphones or on low volume. Electrical appliances, including TV's and radios are not allowed on the tier. Any sound emitting device that can be heard from the general-purpose area can be confiscated and disciplinary action will be taken.

#15, Decl. of Brooks, Ex. B, p. 2.

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford

2

plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief...

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Alternatively, the Ninth Circuit has stated that the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003). These alternatives represent "extremes of a single continuum" rather than two separate

3

tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813.

Preliminary injunctive relief is designed to preserve the status quo until the court has an opportunity to hear the lawsuit on its merits. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006). An injunction is proper only if the moving party's remedy at law is inadequate. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Injunctive relief is an "extraordinary remedy," and is granted only under certain circumstances. *Shelton v. Nat'l Collegiate Athletic Ass'n*, 539 F.2d 1197, 1199 (9th Cir. 1976). The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

**2. Eighth Amendment Right Against Cruel and Unusual Punishment**

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). In *Farmer v. Brennan*, 511 U.S. 825 (1994) the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim, stating that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828, *citing Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle v. Gamble*, 429 U.S. 97 (1976). To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard – that the deprivation alleged was "sufficiently serious," and a subjective standard – deliberate indifference by the prison official, or in other words, that the prison official had a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297-304; *Farmer*, 511 U.S. at 834.

4

A "serious medical need" (the objective standard) exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) *citing McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. Essentially, acting or failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate. *Id.* In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference. *Id*. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

5

The Ninth Circuit has found that under certain circumstances, noise levels in prison may inflict pain without penological justification. *Toussaint v. McCarthy*, 801 F.2d 1080, 1110 (9th Cir. 1986); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (holding it was a genuine issue of material fact whether there was excessive noise in the prison's unit so as to constitute an Eighth Amendment violation).[2]

**B. Analysis**

Plaintiff contends that the defendants are depriving him of sleep, which is a "basic human need," because they refuse to address the constant noise level in the lockdown unit at ESP (#9). Plaintiff argues that the sleep deprivation exacerbates the symptoms of his bipolar disorder, which is a significant risk of serious harm to his health. *Id*. Due to the increased symptoms of his mental illness, plaintiff claims he has suffered "frequent cycles of mania and depression that include severe anxiety, severe agitation and inability to sleep, paranoia, thoughts of death and suicide, delusions, loss of appetite, aggressive behavior, fatigue and loss of energy." *Id*. Plaintiff argues that he has filed "numerous" grievances regarding this issue but that the defendants have consistently ignored him and have failed to take any corrective action. *Id*. Plaintiff requests that the court order the defendants to enforce I.P. 7.18 – which requires that the noise level in housing units be kept to a minimum – and to allow plaintiff to purchase his own rubber, moldable ear plugs annually. *Id*.

---

[2] Several of the cases cited by the plaintiff are distinguishable from the facts of this case. Plaintiff cites *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) for the proposition that conditions of confinement that cause sleep deprivation and exacerbate an inmate's mental illness might violate the Eighth Amendment (#9, p. 2). However, in *Gates*, the Fifth Circuit found that it was the combined conditions of confinement – filthy cell conditions, heat levels, lighting levels, laundry conditions, sanitation problems, pest infestation, and improper exercise – along with the excessive noise levels that constituted an Eighth Amendment violation. Plaintiff additionally cites *McAlindin v. County of San Diego*, 192 F.3d 1226 (9th Cir. 1999) to show that courts have found sleep "indispensable to the maintenance of personal health." While this may be true, *McAlindin* is an Americans with Disabilities Act ("ADA") case, not a prisoner case, and involved different legal issues.

6

Defendants' position is that they have not acted with deliberate indifference to the plaintiff's complaints about noise (#15). Defendants filed declarations of defendant Brooks, defendant Weiss and Director of Nursing, Joe Brackbill, to demonstrate that defendants have attempted to address the plaintiff's complaints. Defendants have taken the following actions: (1) an attempt was made to treat plaintiff's bipolar disorder, but plaintiff refused the medication (#15, Decl. of Brackbill, ¶ 2); (2) plaintiff is currently attending private sessions with Dr. Bishop, licensed psychiatrist (*Id.*, ¶ 3); (3) plaintiff has been told that he may "kite" medical if the noise level is too high (#15, Decl. of Brooks, ¶ 8) but he has not done so (#15, Decl. of Brackbill, ¶ 4); (4) plaintiff is housed in a single cell and was placed in a "quiet" area of Unit 7 (#15, Decl. of Weiss, ¶ 4); (5) plaintiff was offered the opportunity to transfer to the infirmary (#15, Decl. of Weiss, ¶ 15, Ex. F); (6) plaintiff may purchase ear plugs from the canteen and has never been prohibited from doing so (#15, Decl. of Weiss, ¶ 6, Decl. of Brackbill, ¶ 5); (7) the prison has issued notices of charges to certain inmates regarding noise levels (#15, Decl. of Weiss, ¶ 9; Decl. of Brooks, ¶ 11); (8) defendant Brooks has conducted weekly inspections and followed-up with staff to insure that noise restrictions are being enforced (#15, Decl. of Weiss, ¶ 5; Decl. of Brooks, ¶ 7, 9, 10); and (9) plaintiff was given two opportunities to transfer out of the lockdown unit (Unit 7) but refused because he stated that he was not able to work due to his mental illness (#15, Decl. of Weiss, ¶ 7). Further, defendant Brackbill's declaration states that ESP medical staff does not believe that the plaintiff's bipolar disorder is significant "from a mental illness point of view" and that plaintiff has been classified as having "no recognized mental condition" (*Id.*)

Defendants also attach copies of plaintiff's grievances, contending that they have responded properly to each grievance. *See* #15, Decl. of Weiss, Ex. A (forwarding plaintiff's February 11, 2005 informal grievance to defendant Brooks for "disposition and attention"); Ex.

B (responding to plaintiff's March 28, 2005 first level grievance by stating that Unit 7 staff were instructed to enforce IP 7.18, general rule 1.3); Ex. C. (responding to plaintiff's October 5, 2005 informal grievance by inquiring with the Housing Sergeant, and stating that "staff has been advised as to procedure for properly handling this problem if it does arise"); Ex. D (responding to plaintiff's November 9, 2005 informal grievance by stating "according to Dr. Milner, the AWO is arranging a private session with mental health staff for the immediate future"); Ex. E (responding to plaintiff's November 18, 2005 informal grievance by stating that the plaintiff's complaint had been investigated by the AWO and Housing Sergeant, that they had taken the necessary steps to eliminate further disruption, and that "all unit seven staff will enforce all policies" (emphasis in original)); and Ex. F (responding to plaintiff's December 16, 2005 first level grievance by stating that plaintiff may request placement in the infirmary mental health section or kite medical at anytime).  These actions demonstrate that defendants have attempted to accommodate plaintiff's noise complaints (#15).

Moreover, defendants essentially argue that plaintiff's motion for preliminary injunction is moot because the plaintiff was transferred from Unit 7 in May 2006 to the infirmary (for reasons unrelated to this litigation), after which he was transferred to Unit 5, where he will apparently remain for the foreseeable future (#15, *citing* Brooks Decl., ¶¶ 3 and 4).  Defendants note that under prison rules, the plaintiff may not be moved to a different Level (he is currently in Level 3, which is maximum security), because he states that he is unable to work due to his medical problems (#15, Brooks Decl., ¶ 4, Ex. A, pp.6-8).  Inmates in Levels 1 or 2 are required to work.  *Id*.

In his reply, plaintiff claims that defendants' attempts to portray him as refusing medical care are false and misleading (#20).  Plaintiff notes that he suffers from Hepatitis C ("HCV") and

8

requires a liver biopsy and/or an HCV blood test to determine the stage of his illness. *Id*. After consultation with Dr. Bishop, plaintiff agreed to take only small doses of Prozac rather than medications specifically meant for bipolar disorder because such medications may have harmful side effects on his liver given his HCV. *Id*. Additionally, plaintiff asserts that he was granted visits with Dr. Bishop because the court ordered such visits as a condition of settlement in another civil case. *Id*., *citing Miller v. McDaniel*, Case No. CV-N-01-0268- ECR (RAM); *see also* #20, Ex. 8.

Further, plaintiff argues that defendants only recognize his bipolar disorder when it benefits their interests to do so. Plaintiff challenges defendant Brackbill's declaration that the medical staff does not believe he has bipolar disorder as misleading (#20). Plaintiff contends that the prison denied plaintiff the expensive HCV medication on the basis of his bipolar disorder, *see id*., Ex.4, p.2, and that in the civil rights case challenging that denial, the State of Nevada argued that the HCV drugs were denied because the plaintiff's bipolar disorder was a "disqualifying mental illness." *Id.*, Ex. 5, pp. 6-7. Plaintiff points out that defendants failed to submit a declaration from Dr. Bishop, plaintiff's treating physician for his bipolar disorder, and instead submitted a declaration from ESP's Director of Nursing (#20).[3]

As for the use of earplugs to reduce noise, plaintiff asserts that the earplugs purchased at the canteen are easily torn and cause infections; instead, he would prefer to purchase the same rubber, moldable earplugs that he was prescribed a number of years ago by the prison. *Id*.; *see*

---

[3] The court is troubled by the fact that the defendants have represented in this case that ESP medical staff do not think the plaintiff suffers from bipolar disorder, *see* #15, Decl. of Brackbill, ¶ 2, even though ESP medical staff denied the plaintiff treatment for HCV on the basis of his bipolar disorder. *See* #20, Ex. 4, p. 2. Further, it is apparent that defendants have taken the position in the past, in front of this court, that the plaintiff <u>does</u> have bipolar disorder; in fact, defendants have used the plaintiff's diagnosis with bipolar disorder as a defense to plaintiff's claim. *See* #20, Ex. 5, pp. 2 and 6-7, *Miller v. Crawford, et al.*, CV-N-03-0098-RAM (RAM), #153. The court cautions the defendants to be aware of prior filings before this court so as not to appear disingenuous.

9

*also* #20, Ex. 6. Plaintiff contends that he has not refused to work, but that he is unable to work because of his HCV, and he also claims that he has pointed out to different caseworkers, including defendant Weiss, on numerous occasions that other inmates were playing their "boom boxes" extremely loudly and that staff ignored the noise level (#20). Finally, plaintiff argues that his transfer to Unit 5-B was not a solution because it is a noisy lockdown unit like Unit 7, and his claim pertains to the "ongoing and unchecked problem" of noise in <u>all</u> lockdown units at ESP, not just Unit 7. *Id*.

**1. Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

To prove an Eighth Amendment violation, a plaintiff must show that the deprivation alleged was sufficiently serious, and that a prison official was deliberately indifference to a substantial risk of serious harm to the inmate. *Wilson*, 501 U.S. at 297-304; *Farmer*, 511 U.S. at 834. The Ninth Circuit has found that under certain circumstances, noise levels in prison may inflict pain without penological justification. *Toussaint v. McCarthy*, 801 F.2d 1080, 1110 (9th Cir. 1986); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (holding it was a genuine issue of material fact whether there was excessive noise in the prison's unit so as to constitute an Eighth Amendment violation).

The court considers bipolar disorder "a serious medical need." A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the

"unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Although the plaintiff has provided no specific evidence that he was diagnosed with bipolar disorder, such as medical reports or affidavits from his treating physician, the court recognizes that the defendants have admitted on other occasions that the plaintiff suffers from bipolar disorder. *See* #20, Ex. 5, *Miller v. Crawford et al.*, CV-N-03-0098- RAM (RAM) #153. The plaintiff has alleged that he has feelings of depression and thoughts of suicide, which quite obviously constitute "the presence of a medical condition that significantly affects an individual's daily activities." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

However, the court finds that the plaintiff has not submitted evidence that demonstrates that the defendants were deliberately indifferent to his serious illness. The plaintiff is currently being treated by a psychiatrist for his bipolar disorder, with whom he has consulted regarding his medical condition and treatment options (#20, Decl. of Miller, ¶ 2). Further, although the court acknowledges it was for medical reasons pertaining to his HCV, plaintiff has admittedly made the conscious decision to forego the medication that would help to stabilize his bipolar disorder symptoms. *Id*. Such a decision is understandable considering plaintiff's other medical problems; however, people living with such disorders in the world outside prison must make similar decisions regarding their health. There is no evidence before that court that the defendants have denied plaintiff the medication he requires to stabilize his bipolar disorder symptoms.

It also appears that the defendants have made more than one attempt to solve plaintiff's complaints: by placing plaintiff in what defendants state is a "quieter" area of Unit 7; by giving the plaintiff a single cell; and by offering the plaintiff placement in the infirmary (#15, Decl. of Weiss, ¶¶ 4 and 15, Ex. F). The court additionally finds it notable that defendant Brooks has responded to the plaintiff's grievances by re-counseling the staff on noise regulations, making

11

random inspections of the housing units, and personally giving out noise violations (#15, Decl. of Brooks, ¶¶ 7, 9, 10 and 11). It appears that prison officials, including the Warden, have read, investigated and responded affirmatively and promptly to plaintiff's grievances. *See* #15, Decl. of Weiss, Exs. A – F. Plaintiff provides no evidence that demonstrates that the defendants have ignored his kites or complaints.

Additionally, the defendants have twice arranged for the plaintiff transfer out of Level three, which is the lockdown unit (#15, Decl. of Weiss, ¶ 7). Prisoners in Levels 1 or 2 must work to remain in those Levels (#15, Decl. of Brooks, ¶4). The plaintiff admitted that he "refused to move to Unit 8 because he has been so disabled from the extrahepatic manifestations of his HCV condition, and, not because he doesn't (sic) want a job" (#20, p. 5). However, the plaintiff provides no evidence to the court, such as an affidavit from his treating physician or a copy of his medical records, that his medical condition prevents him from prison employment.

The plaintiff has not presented evidence to show that the prison staff denied, delayed or unintentionally interfered with medical treatment for the plaintiff. *See Hutchinson v. United States*, 838 F.2d 390, 394 (9 Cir. 1988); on the contrary, the defendants appear to have attempted to accommodate the plaintiff the best they can within the confines of plaintiff's maximum security classification. Although plaintiff clearly is not happy with any of the solutions the defendants have offered, the actions taken by the defendants and the responses given to the plaintiff that are today before the court demonstrate that the defendants were not deliberately indifferent to plaintiff's medical needs. Thus, the court cannot conclude that the plaintiff has a "reasonable probability" of success on the merits of his claim.

**2. Irreparable Injury**

To obtain a preliminary injunction, a plaintiff must offer evidence that he will be

irreparably injured without the injunction. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991), *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

The court finds that while it appears that the plaintiff is affected by the noise issues in prison, plaintiff has not demonstrated irreparable harm. Plaintiff appears to have managed his mental health issues with therapy treatments, Prozac and earplugs,[4] and submits no medical records or affidavits that show that he is so affected by the noise that he may be irreparably harmed in the immediate future. Thus, the court concludes that there is no irreparable injury here.

### 3. Balance of Hardships and the Public Interest

Because the court found that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the court has not addressed the balance of hardships or public interest elements.

### 4. Alternative Test

The Ninth Circuit has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove either (1) a likelihood of success on

---

[4] Although the earplugs sold in the prison canteen are not to plaintiff's liking, they *are* available for purchase and there is no evidence that the defendants have prevented the plaintiff from purchasing them. Further, plaintiff has not alleged that the canteen earplugs do not work – just that they "get dirty, tear and cause plaintiff to suffer from inflammation in his ears" (#20, p. 4; *see also* #9, Ex. 2). Plaintiff does submit a kite showing that medical gave him medication for an ear inflammation in 2005, however, it is not clear that the earplugs caused the inflammation (#20, Ex. 6, p. 2). On the other hand, it does not appear to be a hardship on the defendants to allow the plaintiff to purchase, with his own funds, the type of earplugs first prescribed by prison medical staff in 1998, especially if the plaintiff presents evidence that the earplugs from the prison canteen cause infection or inflammation.

the merits and the possibility of irreparable injury, or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). Above the court concluded that plaintiff has not shown that he can meet the first alternative test – a likelihood of success on the merits and irreparable injury.

Regarding the second alternative test, the court concluded above that it was not likely that the plaintiff would succeed on his claim on the merits, and thus, there do not appear to be "serious questions" going to the merits of his claim. The second alternative test is not met.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, plaintiff has not provided evidence to the court demonstrating a likelihood of success on the merits of his claim, irreparable injury or that serious questions regarding the merits of his claim have been raised. Therefore, the court recommends that plaintiff's motion for a preliminary injunction (#9) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the plaintiff's motion for a preliminary injunction (#9) be **DENIED**.

**DATED:** January 11, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**